UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

INES BRICENO[1], ESMERALDA LEON, and
FRANCISCO VARGAS AGUIRRE,
Individually, and on behalf of all other person
similarly situated who were employed by USI
SERVICES GROUP, INC. ULTIMATE
SERVICES INC., and FRED GOLDRING
and/or any other entities affiliated with or
controlled by USI SERVICES GROUP,
ULTIMATE SERVICES INC., AND FRED
GOLDRING,

**MEMORANDUM & ORDER**
09–CV–4252(PKC)

Plaintiffs,

v.

USI SERVICES GROUP, INC., ULTIMATE
SERVICES INC., and FRED GOLDRING
and/or any other entities affiliated with or
controlled by USI SERVICES GROUP, INC.,
ULTIMATE SERVICES INC., and FRED
GOLDRING,

Defendants.
-----------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

The named Plaintiffs ("Named Plaintiffs" or "Plaintiffs") bring this putative class and

collective action against Defendants USI Services Group, Inc., Ultimate Services Inc., and Fred

Goldring (collectively, "Defendants" or "USI") for failure to pay wages and overtime

compensation in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"),

and parallel provisions of New York and New Jersey labor law.

There are three motions presently before the Court: (1) Defendants' motion for summary

judgment on the complaint as to the Named Plaintiffs, and/or decertification of the FLSA class

---

[1] Plaintiffs' counsel has misspelled the names of Ines Briceno and Esmeralda Leon in the caption
and intermittently throughout the course of this litigation. The Court has corrected the caption
above to reflect the correct spellings.

("FLSA Collective") that was conditionally certified by the Honorable Joanna Seybert (Dkt. 114); (2) Plaintiffs' motion for partial summary judgment on the sole issue of whether Defendants' meal break deduction policy violates the FLSA and New York Labor Law ("NYLL") (Dkts. 109–110); and, (3) Plaintiffs' motion to amend the complaint to clarify their meal break claims and add all of the individual opt-in Plaintiffs as Named Plaintiffs. (*Id.*)

For the reasons set forth below, Defendants' motion for summary judgment and/or to decertify the FLSA Collective and Plaintiffs' motion for partial summary judgment are both denied, and Plaintiffs' motion to amend the complaint is denied in part, and granted in part.

*BACKGROUND*

## I.  **Procedural History**

On October 2, 2009, Plaintiffs filed this class action lawsuit.  On June 6, 2010, Judge Seybert, then-presiding,[2] partially granted Plaintiffs' motion for conditional certification of a collective action, conditionally certifying an overtime class under the FLSA, limited to USI service employees who worked at the J.C. Penney store in Massapequa, New York between June 7, 2008 and June 6, 2010.[3]  (Dkt. 27.)  After additional briefing, on August 3, 2010, Judge Seybert expanded the FLSA Collective to include all USI service employees employed at USI's 157 other New York and New Jersey customer locations from June 6, 2008 to June 6, 2010. (Dkt. 40.)  The Court did not certify any of Plaintiffs' state law claims.  (*Id.*)  The deadline for

---

[2] This case was reassigned to the undersigned on April 8, 2013.

[3] The parties incorrectly state that the class was certified for the period "two years *prior* to the June 6, 2008 date the Complaint was filed to the present."  (Plaintiffs' Counter-Statement to Defendants' 56.1 Statement of Material Facts ("Pl. 56.1"), Dkt. 116, at ¶ 4 (emphasis added).) Judge Seybert clearly stated in her June 6, 2010 Opinion that the collective action was certified for the period "between June 7, 2008 and the present [*i.e.*, June 6, 2010]." (Dkt. 27 at 9.)

USI service employees to opt-in to the FLSA Collective was December 31, 2010. (Def. 56.1[4] ¶ 6.) As of that date, 169 of the 3,279 potential opt-in claimants had opted in. (*Id.*) After the deadline passed, 19 others attempted to opt in. (*Id.*) Accordingly, there are potentially 188 opt-in Plaintiffs, 169 of whom the Court finds are part of the FLSA Collective.[5] (*Id.*)

On September 28, 2012, Judge Seybert denied Plaintiffs' motion to certify a class under Fed. R. Civ. P. 23, but granted Plaintiffs leave to redefine the proposed class to, *inter alia*, (1) clarify whether they also challenge the policies in place for correcting timekeeping errors prior to

---

[4] Citations to "Def. 56.1" refer to Defendants' Statement of Material Facts pursuant to Local Rule 56.1. (Dkt. 114–21.) Citations to "Def. 56.1(B)" refer to Defendants Response to Plaintiffs' Statement of Undisputed Material Facts pursuant to Local Rule 56.1. (Dkt. 113–32.) Citations to "Pl. 56.1(B)" refers to Plaintiffs' Statement of Material Facts Pursuant to 56.1. (Dkt. 111.) Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that this Court has deemed the underlying factual allegation undisputed. Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein. Where relevant, however, the Court may cite directly to underlying documents.

[5] Defendants argue that 81 of the 188 opt-in Plaintiffs are incapable of qualifying as part of the FLSA Collective. Defendants claim that 38 opt-in Plaintiffs do not have a record of being employed by USI or, if they applied for employment with USI, never worked for USI. (Affirmation of USI's Director of Human Resources Jay Baranker in Support of Defendants' Motion to Decertify the FLSA Collective and for Summary Judgment ("Baranker Aff. (1)"), filed 8/6/14, Dkt. 114–11, at ¶ 56.) Defendants allege that 19 opt-in Plaintiffs are ineligible because they filed their opt-in consent forms after the December 31, 2010 deadline. (*Id.* ¶ 57.) Defendants claim that 2 opt-in Plaintiffs, Luis Herrera and Francisco Martinez, did not work in New York or New Jersey, as required by the August 3, 2010 Order, and that 6 opt-in Plaintiffs stopped working for USI prior to the June 7, 2008 claims accrual period established by the Court's June 6, 2010 Order. (*Id.* ¶¶ 58–59.) In addition, Defendants claim that 16 opt-in Plaintiffs who were employed as Boardwalk Hall ushers were not subject to the meal break deduction. (*Id.* ¶ 60.)

The Court agrees that the 19 opt-in Plaintiffs who filed their consent forms after the deadline should be dismissed from the FLSA Collective, but disagrees with the remainder of Defendants' analysis. The Notice of Lawsuit was sent to specific USI employees according to a list provided by *Defendants* four years ago. Defendants represented that the list consisted of the entire potential Court-certified collective. Defendants cannot now, at this late date, argue that the list *they* provided to Plaintiffs was faulty. Accordingly, the Court finds that aside from the 19 opt-in Plaintiffs who missed the opt-in deadline, the remaining 169 opt-in Plaintiffs are part of the FLSA Collective certified by Judge Seybert on June 6, 2010.

the implementation of the telephonic recordkeeping policy, and provide evidence in support of such a class definition; and (2) provide further detail on whether the issues unique to the Massapequa store predominate over the issues applicable to the class.  (Dkt. 73.)  Plaintiffs have not renewed their motion for certification.

On November 14, 2014, Plaintiffs moved for partial summary judgment solely as to one aspect of both their overtime and regular wage claims, namely, Defendants' liability under the FLSA and NYLL for the alleged failure to compensate Plaintiffs for missed meal breaks.[6]  (Dkt. 109–10.)  Plaintiffs also moved to amend the complaint to clarify their meal break claims, and to add all individual opt-in Plaintiffs as Named Plaintiffs to the complaint.  (*Id.*)  On the same date, Defendants moved for summary judgment dismissing the complaint as to the three Named Plaintiffs and/or to decertify the FLSA Collective.  (Dkt. 114.)

---

[6] As Defendants correctly note, Plaintiffs' meal-break claim appears to be a Johnny-Come-Lately addition to this case.  The complaint does not mention missed meal breaks, and the only reference to "deductions" is: "By withholding wages earned, including overtime payments for time worked after forty hours in one week[,] from Plaintiffs, . . . Defendants made unlawful deductions in wages owed by Plaintiffs."  (Compl. ¶ 48.)  However, Plaintiffs did raise a meal-break claim as part of its Rule 23 class certification motion in October 2011.  As discussed *supra*, Judge Seybert denied Plaintiffs' motion because Plaintiffs had failed to clearly identify the allegedly unlawful meal-break policies or practices that were common to all USI employees.  (Dkt. 73.)  Judge Seybert denied certification with respect to Plaintiffs' meal-break claim, but granted them leave to renew the motion upon clarification of this issue, among others.  (*Id.*)  The Court construes Plaintiffs' instant partial summary judgment motion as being made pursuant to Judge Seybert's grant of leave to renew their request for certification – though the request is for collective action – based on a clarification of their meal-break claim.

II. **Factual Background**

A. **The Parties**

Both Defendants USI and Ultimate Services[7] are companies incorporated under the laws of the State of New Jersey, and are engaged in the facility management and janitorial business. (Pl. 56.1(B) ¶¶ 1–2.)  Defendant Fred Goldring is a resident of New Jersey, and at all relevant times was an officer, director, president, and/or owner of USI and Ultimate Services.  (*Id.* ¶ 3.) Defendants provide facility management and janitorial services to their customers at the customers' business locations, many of which are stores.  (Baranker Aff. (2)[8] ¶ 2.)  The department store chain, J.C. Penney, is one of Defendants' customers.  Pursuant to its contract with J.C. Penney, Defendants provide janitorial services at approximately 158 J.C. Penney stores in New York and New Jersey.  (Dkt. 40.)

The Named Plaintiffs were all employed by Defendants as janitors at the J.C. Penney store in Massapequa, New York.  (Pl. 56.1(B) ¶ 4–5, 7.)  Ines Briceno ("Briceno") worked there from approximately 2002 through 2003, and again from approximately 2006 through 2009.  (*Id.* ¶ 4.)  Franciso Vargas Aguirre ("Aguirre") worked there from approximately 2001 through 2003.[9]  (*Id.* ¶ 7).  Plaintiff Esmeralda Leon ("Leon") worked there from 2004 to 2006, and again from approximately 2007 until 2009.  (*Id.* ¶ 5.)

---

[7] Because USI and Ultimate Services are effectively operated as one company under the USI name, they will be referred to as "USI" in this opinion.

[8] Citations to "Baranker Aff. (2)" refer to Baranker's Affirmation in Opposition to Plaintiffs' Motion for Summary Judgment, filed 9/19/14.  (Dkt. 113–10.)

[9] Since Aguirre's period of employment with Defendants pre-dates the FLSA Collective period conditionally certified by Judge Seybert and pre-dates the meal break deduction system at issue in this case, which commenced in 2006, he is not an appropriate Named Plaintiff to this action. There is evidence that Aguirre's son, Giovanny Hernandez Vargas ("Vargas"), used his father's name and personal identification number ("PIN") while working for Defendants, and collected

Current and former employees falling within the conditionally certified FLSA class description were notified of this action, and some have opted-in to this case. The putative plaintiffs include all current and former hourly USI service employees employed at one of more of USI's New York and New Jersey customer locations during the relevant time period.

**B. USI's Timekeeping and Automatic Meal Break Deduction Systems**

Prior to 2006, USI tracked employee work hours through a paper system in which timesheets were generated and maintained by a supervisor at the store level (the "Paper System"). (Baranker Aff. (2) ¶ 12.) The entries on the timesheets were handwritten, and included columns for the employee's name, PIN, and days of the week with the number of hours that the employee worked written in. (*Id.*) The supervisor was required to review the timesheets, indicate his or her approval by signing the timesheet, and then the timesheets either would be faxed to USI Headquarters or collected from the stores by the District Manager for transmission to USI Headquarters. (*Id.*)

In 2006, Defendants switched to a telephonic timekeeping system from Management Information Technology Corporation ("MITC System"). (Golub Tr.[10] 40:17–41:2.) Under this new system, each employee was assigned a PIN and given an 800 number to call at the beginning and end of his or her shift each day. (*Id.* at 41:10–42:6.) Upon calling an 800

---

paychecks under Aguirre's name from either 2005 to 2008 or 2008 to 2010. *Cf.* Testimony from Giovanny Hernandez Vargas' April 4, 2014 deposition ("Vargas 2014 Tr."), Dkt. 113–8 at 4:10–23, (stating that he worked for Defendants from 2008 to 2010), *with* Testimony from Giovanny Hernandez Vargas' June 24, 2010 deposition ("Vargas 2010 Tr."), Dkt. 113–3 at 72:13–17; 80:14–16, (stating that he worked for Defendants from 2005 to 2008). Though Vargas may be an appropriate opt-in Plaintiff, his father, Aguirre, does not have standing to assert claims on behalf of putative class members, and is dismissed from this action.

[10] Citations to "Golub Tr." refer to the testimony from USI's Chief Financial Officer ("CFO") Barry Golub's July 28, 2011 Deposition. (Dkt. 114–3.)

number, employees were directed by an automated recording to enter their PIN, their department number, and the code for their job title.  (*Id.* at 42:1–25.)  Employees were required to call from designated phones at their worksites, or else their time would not be recorded.  (*Id.* at 44:21–45:6.)  The MITC System would note the time of the call, and transfer that information to Defendants' payroll records.  (*Id.* at 10:1–25.)[11]

The MITC System was phased in over a three-to-six month period so that all employees could be properly trained on how to use the MITC software.  (*Id.* at 40:21–41:7.)  USI provided training and written instructions to USI employees in English and Spanish on how to use the MITC System.  (Ex. A–C to Baranker Aff. (1).)  Defendants also claim that USI's supervisors and District Managers were trained to inform USI employees of their opportunities for meal breaks and how to properly pay employees when they worked through their meal breaks.  (Def. Reply[12] at 5.)

Either in 2006 or thereafter, USI implemented a feature of MITC's software that automatically deducted 30 to 60 minutes, depending upon USI's contract with its customers, for meal breaks for employees who worked in excess of 6 hours and 7 minutes per day[13] ("Meal

---

[11] According to Defendants, the MITC system was not implemented at four USI customers' locations – *i.e.*, Food Circus, Hard Rock Café, Fooderama, and Boardwalk Hall – and USI managers at these locations continued to rely on the Paper System of timekeeping and attendance after 2006.  (Baranker Aff. (2) ¶ 18.)

[12] Citations to "Def. Reply" refer to Defendants' Reply in Further Support of Motion to Decertify the Conditional Collective and for Summary Judgment, filed 11/14/14.  (Dkt. 120.)

[13] The software applied a seven-minute grace period, whereby no meal break deduction would be imposed if the employee "clocked-out" within seven minutes of finishing a six-hour shift.  (Baranker Aff. (2) ¶ 25.)

Break Deduction System").[14]  Defendants claim that all of its employees were informed of this new automatic-meal-break-deduction policy and that the policy was printed on their paychecks.[15] (Golub Tr. 46:2–16; 80:8–13.)

Defendants claim that there is no company-wide policy requiring anyone to work through a meal break.  (Def. Opp. at 7.)  According to Defendants, whether a USI employee ever worked through a meal break was decided by an immediate supervisor at the particular store, and had to be approved by the District Manager servicing the store region.  (Def. Mem.[16] at 9; Baranker Aff. (2) ¶ 26.)  Defendants assert that if an employee worked longer than 6 hours and 7 minutes and failed to take a meal break that day, the employee's supervisor would report that to USI's Human Resources office, and the time would be added to the employee's next pay check.  (Def. Mem. at 9; Golub Tr. 70:7–22.)  Defendants claim that USI also provided a paper correction form, in both English and Spanish, for employees who believed that they had been not paid for all hours worked.  (Golub Tr. 70:23–71:17.)  The correction form was to be completed by the District Manager who would include the hours that the employee should have been paid, and attach a

---

[14] The record contains conflicting representations regarding when Defendants began using the Meal Break Deduction System.  USI's CFO Barry Golub testified that the system was implemented in 2006.  (Golub Tr. 30:20–24.)  Plaintiffs also contend that this system was first used in 2006.  (Pl. 56.1 ¶ 33.)  Judge Seybert, for purposes of Plaintiffs' Rule 23 certification motion, stated that the system was implemented in 2006.  (Dkt. 73.)  However, Defendants claim in their 56.1 statement that this system was not implemented until 2008 (Def. 56.1 ¶ 34), and then inconsistently state in their briefing that the implementation did not occur until 2009. (Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and to Amend the Complaint ("Def. Opp."), filed 9/19/14, Dkt. 113, at 4.)

[15] However, the paychecks that the parties have submitted with their Rule 56 papers bear only the notice that employees are entitled to meal breaks, but not that employees can re-claim pay for any missed meal breaks of how to do that.  (Ex. F to Baranker Aff. (2).) (Dkt.114–16.)

[16] Citations to "Def. Mem." refer to Defendants' Memorandum of Law in Support of Their Motion to Decertify the Conditional Class and Summary Judgment, filed 8/6/14.  (Dkt. 114–1.)

copy of the employee's sign-in sheet. (*Id.* at 72:19–74:2.) Defendants allege that once USI's payroll department received the completed form, the employee's time was entered into the payroll software, and the employee was paid. (Baranker Aff. (2) ¶¶ 28–29.) Defendants also note that employees could call USI's Payroll Department directly to advise them that they had not been paid correctly. (*Id.* ¶ 29.)

Plaintiffs provide contrary evidence, showing that USI's timekeeping and meal break policies were not being followed or enforced, that USI employees were not made aware of these policies, that USI employees were not given meal breaks, and that USI's employees were not fully compensated for their hours of regular or overtime work, including not being compensated for missed meal breaks.

Briceno testified that she was not consistently paid for all of the hours that she worked for Defendants. (Briceno 2010 Tr. 10:6–23.) Briceno stated that when she tried to call the MITC telephonic system to clock-in, she frequently reached an operator who informed her that the dialed phone number was invalid. (Briceno Aff.[17] ¶ 7; Briceno 2010 Tr. 42:2–43:17.) Briceno asserted that she informed her supervisors on multiple occasions about the defective MITC System and that though the supervisors assured her that they would manually enter her hours on a form, her hours were underreported throughout her tenure at USI. (Briceno 2010 Tr. 16:10–17:24; 41:18–20.) Briceno testified that despite her conservations with her supervisors about not being paid properly, the problem was never remedied, and she was never fully compensated for the hours she worked. (*Id.* at 16:10–20:4; 80:14–19; 86:8–87:20.) Briceno claimed that she was not aware that a lunch period was automatically deducted from her paycheck. (Briceno 2014

---

[17] Citations to "Briceno Aff." refer to the Affirmation of Briceno in Support of Plaintiff's Motion for Partial Summary Judgment, dated 1/27/10. (Dkt. 112–2.)

Tr.[18] 14:4–8.)  However, she stated that even after working six-hour shifts, the USI supervisors at the Massapequa store would not allow her to eat lunch, and the only time she could eat was when she was taking the garbage out.  (*Id.* at 14:4–17; 15:20–16:12.)

Leon also testified that the MITC System was defective and that she complained to her supervisors about the problem.  (Leon Aff.[19] ¶ 7; Leon 2010 Tr.[20] 26:23–28:6.)  Leon claims that since the MITC System was not working, the supervisors required employees to record log in/log out times on a form.  (Leon Aff.  ¶ 7.)   Leon alleges that she was not compensated for all of the hours recorded on these forms.  (*Id.*)  Leon testified that she was not aware that a 30-minute meal break deduction was taken from her paycheck until her attorneys made her aware of this issue in 2014.  (Leon 2014 Tr.[21] at 8:18–10:3; 15:17–16:4; 17:24–18:6.)  Leon testified that she was never allowed a lunch break and that the only time she was able eat was when she went to the restroom and/or was out of her supervisors' view.  (*Id.* at 24:19–25:22.)

### C.   **"Ghost Employees" at the Massapequa J.C. Penney Store**

In or around April 2009, Defendants were notified by J.C. Penney personnel that the USI supervisors at the Massapequa J.C. Penney store were falsifying USI employees' time records.

---

[18] Citations to "Briceno 2014 Tr." refer to the testimony from Briceno's 4/4/14 deposition.  (Dkt. 114–6.)  An interpreter was present during the deposition.

[19] Citations to "Leon Aff." refer to the Affidavit of Esmeralda Leon, dated 1/12/10.  (Dkt. 112–4.)

[20] Citations to "Leon 2010 Tr." refer to the testimony from Esmeralda Leon's May 19, 2010 deposition.  An interpreter was present during the deposition.  (Dkt. 114–5.)

[21] Citations to "Leon 2014 Tr." refer to the testimony from Leon's April 4, 2014 Deposition.  An interpreter was present during the deposition.  (Dkt. 112–24.)

(Baranker Tr.[22] 49:22–52:23.)  The USI supervisors would not inform Defendants when an employee had quit or was fired, and would instead hire new employees and allow them to use the departed employee's PIN, and/or allow existing employees to work extra shifts using the departed employee's PIN (collectively, "ghost employees").  (*Id.*)  The supervisors would then receive the ghost employee's check, and pay the ghost employee in cash.  (*Id.* at 51:21–52:23.)

This conduct affected all three of the Named Plaintiffs.  Though Briceno worked for Defendants from 2002 through 2003, and from 2006 through 2009 (Briceno Aff. ¶ 3), from 2006 through 2009, Briceno was told by her USI supervisor to log in and out using her daughter's PIN.  (Briceno 2010 Tr. 23:23–26:21.)  Leon regularly worked two shifts each day: in the morning she would log in and out as herself, but in the afternoon, at her supervisor's direction, she logged in and out using the PIN of Briceno's son, Ortega Cristobal.[23]  (Leon 2010 Tr. 7:2–9:11.)  Vargas's payroll records show him working for Defendants through 2008, even though he stopped working for them in 2003, because other employees continued to log in and out using his PIN.  (Aguirre Aff.[24] ¶ 3; Aguirre Tr.[25] 78:12–79:11; Vargas 2010 Tr. 74:1–77:12 (Aguirre's son testifying that he would log in and out using his father's PIN, and would receive checks payable to his father); Chica Aff.[26] ¶¶ 11–12 (employee stating that he was paid in cash by Aguirre).)

---

[22] Citations to "Baranker Tr." refer to testimony of Jay Baranker's July 28, 2011 Deposition. (Dkt. 60–1.)

[23] Briceno testified that at least two other employees were directed to use her son's PIN. (Briceno 2010 Tr. 46:6–48:7.)

[24] Citations to "Aguirre Aff." refer to the Affidavit of Francisco Vargas Aguirre, dated 1/12/10. (Dkt. 112–8.)

[25] Citations to "Aguirre Tr." refer to the testimony from Franciso Vargas Aguirre's deposition on May 19, 2010.  An interpreter was present during the deposition.  (Dkt. 114–5.)

[26] Citations to "Chica Aff." refer to the Affidavit of Rene Chica, dated 1/12/10.  (Dkt. 112–10.)

There is no evidence in the record that this conduct occurred at any of Defendants' other customer locations.

*DISCUSSION*

**I.   <u>Summary Judgment Motion</u>**

   **A.  <u>Standard of Review</u>**

   The standard for summary judgment is well-established.  Summary judgment may be granted only if the submissions of the parties taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252 (1986).  "The moving party bears the burden of establishing the absence of any genuine issue of material fact," *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010); *see Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006), after which the burden shifts to the non-moving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011); *see also F.D.I.C. v. Great American Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010).  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

   The non-moving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. *Spinelli v. City of N.Y.*, 579 F.3d 160, 167 (2d Cir. 2009) (internal quotations and citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 247; *see*

*also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56–57 (2d Cir. 2012); *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). The non-moving party cannot avoid summary judgment simply by relying "on conclusory allegations or unsubstantiated speculation," *Jeffreys*, 426 F.3d at 554 (quotations and citations omitted); *see also DeFabio v. East Hampton Union Free Sch. Dist.*, 623 F.3d 71, 81 (2d Cir. 2010); and must offer "some hard evidence showing that its version of the events is not wholly fanciful." *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008). In determining whether a genuine issue of fact exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008).

### B.  Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs seek partial summary judgment on its claim that Defendants violated the FLSA through their Meal Break Deduction policy. Plaintiffs argue that, pursuant to this policy, USI "routinely manipulating time records to reflect a 30 or 60 minute unpaid lunch period, despite clear evidence that such breaks were not provided.[27] (Pl. Mem.[28] at 1.) These automatic deductions, according to Plaintiffs, resulted in improper deductions to employee wages. (*Id.*)

It is undisputed that USI has a policy whereby employees who work more 6 hours and 7 minutes in a day are subject to an automatic meal break deduction of either 30 or 60 minutes. However, courts in this circuit have consistently found that such automatic meal break deduction policies are not *per se* illegal. *See, e.g.*, *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 27 F. Supp. 3d 313, 321 (E.D.N.Y. 2014); *Wolman v. Catholic Health Sys. of Long Island,*

---

[27] Notably, even as late as depositions held in 2014, almost five years after this action was filed, Plaintiffs were unaware that this action concerned a claim for unpaid meal breaks. (Briceno 2014 Tr. at 10:6–24; Leon 2014 Tr. 8:18–20; 9:2–3.)

[28] Citations to "Pl. Mem." refer to Plaintiffs' Memorandum of Law in Support of their Motion for Partial Summary Judgment and to Amend the Complaint, filed 7/31/14. (Dkt. 110.)

*Inc.*, No. 10 Civ. 1326, 2012 WL 566255, at *7 (E.D.N.Y. Feb. 16, 2012), *rev'd on other grounds sub nom. Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013). Indeed, in *this* case, Judge Seybert has gone even further, finding that it is not *per se* unlawful for an employer to "shift the burden to their employees" to report that they worked during an unpaid meal break. *Briceno v. USI Serv. Grp., Inc.*, No. 09 Civ. 4252, 2012 WL 4511626, at *6 (E.D.N.Y. Sept. 28, 2012) ("[E]mployers utilizing an automatic meal deduction policy may legally shift the burden to their employees to cancel the automatic meal deduction if they work through an unpaid meal.") (quoting *Wolman*, 853 F. Supp. 2d at 301); *see also White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA.")

Plaintiffs concede that automatic meal break deduction policies are not *per se* illegal, but they argue that USI's enforcement of this policy routinely resulted in unpaid wages, and thus violated the FLSA. (Pl. Mem. at 5.) "To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citations omitted). "The relevant knowledge is not 'I know the employee was working,' but 'I know the employee was working *and* not reporting his time.'" *White*, 699 F.3d at 875 (emphasis in original; citation omitted). "When, as here, the moving party has the burden of proof at trial, that party must affirmatively show the absence of a genuine issue of material fact; in short, that no reasonable jury could find

for the non-moving part." *Hinterberger v. Catholic Health Sys.*, 299 F.R.D. 22, 37 (W.D.N.Y. 2014).

Plaintiffs claim that USI had knowledge that most employees worked through their meal breaks even though time was automatically deducted from their paychecks, which resulted in improper deductions to employee wages. (Pl. Reply[29] at 2.) In response, USI argues that: (1) its policy and practice is to pay for all time worked of which it has knowledge (Def. Opp. at 1); (2) whether an employee worked through a meal break period was determined by their immediate supervisor, was not a company-wide policy, and required approval by the District Manger servicing the store region (Def. Reply at 5); and (3) USI had formal policies and procedures that enabled USI employees in all of its customer locations to be compensated for any missed meal breaks.[30] (Def. Mem. at 9–10.)

While Plaintiffs have adduced evidence showing that USI's MITC timekeeping system did not function properly and that USI's policies and procedures for compensating employees' for missed meal breaks were not enforced—both resulting in the underpayment of wages, *see supra* at 9–10—they have failed to put forth sufficient evidence to establish that no genuine issue of fact exists as to these issues, or that no reasonable jury could return a verdict for Defendants. *See Anderson*, 477 U.S. at 248. At a minimum, Plaintiffs cannot demonstrate the absence of a

---

[29] Citation to "Pl. Reply" refer to Plaintiffs' Reply Memorandum of Law in Further Support of Their Motion for Partial Summary Judgment and to Amend the Complaint, filed on 11/14/14. (Dkt. 118.)

[30] As discussed *supra*, there were multiple avenues for USI employees to request payment for missed meal breaks: (1) the employee's supervisor could report to USI's Human Resources office that the employee should be compensated for a missed meal break, and the time would be added to the employee's next pay check; (2) a correction form could be filled out by the employee and completed by the District Manager, who would then submit the form to the payroll department; or (3) an employee could call USI's payroll department directly to report that he or she had not been paid correctly. (Golub Tr. 70:7–22; 72:19–74:2; 76:1–18.)

factual dispute as to whether Defendants had actual or constructive knowledge that USI employees were not being fully or properly compensated for their missed meal breaks. There is no evidence that USI discouraged or prevented its employees from reporting time worked during meal breaks or that USI was on notice that its employees were failing to report time that they had worked during meal breaks.[31] For example, despite asserting that employees at all of USI's customer locations lodged "many informal and formal complaints" to USI management about the failure to compensate them for missed meal breaks, Plaintiffs only cite to a defense exhibit that contains five MITC Phone Problem Call logs indicating that the employees forgot to clock back in after lunch. (Ex. T to Def. Opp.) This evidence actually belies Plaintiffs' meal break claim, to the extent it shows that USI employees were taking their lunch breaks.

Accordingly, because issues of material fact exist as to whether USI's Meal Break Deduction System resulted in employees routinely working through lunch uncompensated and USI's actual or constructive knowledge of this circumstance, Plaintiffs' motion for partial summary judgment, finding FLSA liability with regard to USI's Meal Break Deduction System, is denied.[32]

---

[31] Plaintiffs submit numerous payroll records to argue that even when workers actually clocked in and out for breaks, USI deducted 30 to 60 minutes *in addition to* the break reflected in the telephonic records. (Pl. Mem. at 9.) However, the Court is not persuaded that the payroll records sufficiently establish Defendants' actual or constructive knowledge that their meal break deduction policy resulted in unpaid wages. Plaintiffs have not presented employee testimony to accompany the payroll records to verify whether the employee actually took a meal break on a particular date or followed USI protocol to receive proper compensation for any missed meal breaks.

[32] To the extent that Plaintiffs argue that a collective action is appropriate based solely on Defendants' use of an automatic meal break deduction system, this argument fails for the same reasons discussed *supra* with respect to Plaintiffs' motion for partial summary judgment, *i.e.*, use of such a system, in itself, does not violate the FLSA.

**II.    Defendants' Motion to Decertify the FLSA Collective**

Defendants move to decertify the FLSA Collective[33] that was conditionally certified by Judge Seybert.  Courts in this Circuit use a two-step method in assessing whether to certify a collective action under § 216(b) of the FLSA.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010).[34]    At the conditional certification stage, Judge Seybert found Plaintiffs' allegations sufficient to satisfy the "modest factual showing" required at that stage to determine whether the Named Plaintiffs and potential opt-in plaintiffs "together were victims of a policy or plan that violated the [FLSA]."  (Dkt. 27, at 3.); *see Hoffmann*, 982 F. Supp. at 261; *see also Chowdhury v. Duane Reade, Inc.*, No. 06 Civ. 2295, 2007 WL 2873929, *2 (S.D.N.Y. Oct. 2, 2007).

Now at the second stage, upon USI's post-discovery motion for decertification, the Court must apply heightened scrutiny in determining whether Plaintiffs are similarly situated for purposes of the FLSA.  *Myers*, 624 F.3d at 555 ("At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."); *see also Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007) (noting that

---

[33] As indicated *supra*, Judge Seybert conditionally certified an overtime class under the FLSA to include all USI service employees who worked at USI's New York and New Jersey customer locations from June 6, 2008 to June 6, 2010.  (Dkt. 40.)

[34] Opining on collective action certification under § 216(b) of the FLSA, the Second Circuit has noted, "district courts of this Circuit appear to have coalesced around a two-step method, a method which, while [] not required by the terms of FLSA or the Supreme Court's cases, [] is sensible. The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 554–55 (listing cases).  "The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).  The standard of proof at this first stage is set necessarily low because it merely allows plaintiffs to discover "*whether* 'similarly situated' plaintiffs do in fact exist." *Id.*

second-stage certification requires the court to exercise "a more heightened scrutiny" in determining whether the potential plaintiffs are similarly situated); *Zivali v. AT & T Mobility, LLC*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011) (citing *Damassia v. Duane Reade, Inc.*, No. 04 Civ. 8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006)).  Although the Second Circuit has yet to endorse a set of criteria for evaluating decertification requests, district courts generally consider whether the following factors weigh for or against maintaining a collective action: "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2007 WL 2994278, at *3 (E.D.N.Y. Oct. 11, 2007)); *see also, e.g.*, *Zivali*, 784 F. Supp. 2d at 460; *Ayers v. SGS Control Servs., Inc.*, No. 03 Civ. 9077, 2007 WL 646326, at *5 (S.D.N.Y. Feb. 27, 2007).  If the court concludes that the plaintiffs are similarly situated, the action proceeds collectively; if not, "the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims." *Zivali*, 784 F. Supp. 2d at 460 (citing *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 197 (S.D.N.Y. 2006)).

### A.  <u>Overtime Compensation</u>

Plaintiffs argue that their overtime claim arises from Defendants' use of payroll and timekeeping policies that deprived Plaintiffs of earned wages and overtime compensation.  (Pl. Mem. at 1, 7.)  As explained *infra*, Plaintiffs have presented sufficient evidence that the MITC System was a flawed and inaccurate timekeeping system that was accompanied by an ineffective

complaint procedure, which ultimately resulted in improper deductions to employee wages[35],

and that the Named Plaintiffs and the FLSA Collective were similarly situated with respect to the

application of this system and these procedures.

### 1. Factual and Employment Settings

After 2006, all USI employees working in New York and New Jersey were subject to the

same policies and procedures regarding payroll and timekeeping.[36]  (Ex. U to Pl. Mem.)  These

centralized policies were set forth in the USI Employee Handbook, which every USI employee

was instructed to read and sign at the beginning of his or her employment with the company.

(*Id.*)  In addition, USI operated all payroll, accounts receivable, and accounts payable functions,

and handled all human resource matters, at its corporate headquarters in Springfield, New Jersey,

supervised by Goldring, as USI's Chief Executive Officer.  (Baranker Tr. 16:1–17:15.)  The

entire company's payroll operations were managed by USI's CFO Barry Golub.  (Golub Tr. 9:3–

---

[35] Plaintiffs assert that USI workers at the J.C. Penney store in Massapequa were required to use
the MITC System and also manually enter their log-in/log-out times on a sheet of paper.
(Briceno Aff. ¶ 9; Leon Aff. ¶ 9; Chica Aff. ¶ 9; Giovanny Hernandez Vargas ("Vargas Aff."),
dated 1/12/10, Dkt. 112–6, at ¶ 9; Affidavit of Jose Orellana ("Orellana Aff."), dated 1/12/10,
Dkt. 112–12, at ¶ 9.)  Plaintiffs allege that for these workers, not only did the flawed MITC
System result in improper deductions to their wages, but that these workers were also not
properly compensated based on the number of hours that were recorded on their timesheets.  (*Id.*)
This issue appears to be unique to the Massapequa store and is not an overarching USI policy
that would warrant collective action.  However, because the USI workers at the J.C. Penney
Massapequa store were required, at least in part, to use the MITC System to report their time,
they are properly part of the FLSA Collective.  In addition, the Court does not consider any of the
timekeeping procedures that were unique to the Massapequa J.C. Penney store in analyzing
the decertification claim with respect to the allegedly defective MITC System, which was used
by all USI employees in USI's New York and New Jersey customer locations, except as noted
*supra* at footnote 11.

[36] Judge Seybert previously found that employees working at all 158 of Defendants' New York
and New Jersey customer locations were subject to Defendants' policies.  (Dkt. 40, p. 2.)
However, according to USI's Human Resources Director Jay Baranker, the MITC system was
never implemented at the stores of four USI customers, *see supra* footnote 11.  Accordingly, USI
employees who worked only at those locations cannot be part of the FLSA Collective, since they
were not subject to the allegedly unlawful policies and practices.

20.)  Thus, the Named Plaintiffs and members of the FLSA Collective were all similarly situated with respect to USI's timekeeping and pay practices, regardless of their work location.

As an initial matter, there is nothing unlawful about an employer's use of an automated timekeeping system.  While the FLSA requires that employers "make, keep, and preserve" a record of hours worked by their employees, *see* 29 U.S.C. § 211(c), it does not prescribe any particular form of recordkeeping. *See, e.g.*, 29 C.F.R. § 516.1(a) ("No particular order or form of records is prescribed by the regulations in this part."); *Donovan v. Kaszycki & Sons Contractors, Inc.*, 599 F.Supp. 860, 867 (S.D.N.Y. 1984) ("While no particular form or order of recordkeeping is mandated by the statute or regulations, the employer is required to make and maintain certain records.").  Thus, an automated timekeeping system, such as the MITC System, is lawful, as long as it allows for the complete and accurate recording of all time worked by the company's employees. *Zivali*, 784 F. Supp. 2d at 463.

Here, however, Plaintiffs have presented sufficient evidence that the MITC System used by all USI employees was defective and did not provide a "complete and accurate" record of all hours worked by USI employees.  Plaintiffs have submitted evidence that employees from multiple USI locations routinely encountered problems attempting to record time at the beginning and end of their shifts.[37]  In many cases, the workers reached an operator who advised

---

[37] Briceno Aff. ¶ 7; Aguirre Aff. ¶ 8; Leon Aff. ¶ 7; Affidavit of Jonathan Bell ("Bell Aff."), undated, Dkt. 112–19, at ¶¶ 15–19; Affidavit of Joe Travis ("Travis Aff."), undated, Dkt. 112–17, at ¶¶ 15–19; Kurt Schwarz Aff. ("Schwarz Aff."), undated, Dkt. 112–18, at ¶¶ 16–20; Vargas Aff.  ¶ 7; Orellana Aff. ¶ 7; Chica Aff. ¶ 7; Affidavit of Maria Romero ("Romero Aff."), dated 1/9/10, Dkt. 112–13, at ¶¶ 7–10; Affidavit of Odalis Ulloa ("Ulloa Aff."), dated 6/10, Dkt. 112–14, at ¶¶ 7–10; Affidavit of Betzabeth Campos Aff. ("Campos Aff."), ¶dated 6/22/10, Dkt. 112–15, at ¶¶ 7–10; Affidavit of Santos R. Aguirre ("R. Aguirre Aff."), dated 8/2/10, Dkt. 112–16, at ¶¶ 7–11.

them that the number they dialed was invalid.[38]  Plaintiffs claim that because of Defendants'

faulty time-keeping system, USI did not record all hours employees worked, including hours in

excess of 40 hours in a week.[39]

The Named Plaintiffs and opt-in Plaintiffs were also subject to Defendants' uniform

complaint procedures.  Defendants implemented a uniform "Phone Problem Call Log" form for

all employees to use for any complaints arising from the phone system.  (Dkt. 117–1.)  Plaintiffs

have put forth evidence that this complaint procedure was also defective, and resulted in the

underpayment of USI employees.  Workers from various store locations submitted numerous

complaint forms about the defects and malfunctions in the MITC System[40], but Defendants failed

to take any affirmative steps to correct problems relating to the MITC System, and the company

failed to reimburse the workers for their lost hours.[41]

Defendants argue that in addition to filing the complaint forms, employees could have

called USI's payroll department directly, or ask their store supervisor to call USI headquarters, to

report that they had not been paid correctly.  (Def. Reply at 8, fn. 8.)  However, USI's uniform

protocol for reporting issues relating to the MITC System was for the employee to submit the

---

[38] Briceno Aff. ¶ 7; Leon Aff. ¶ 7; Orellana Aff. ¶ 7; Chica Aff. ¶ 7.

[39] Bell Aff. ¶¶ 10–12; Travis Aff. ¶¶ 10–11; Leon 2010 Tr. 63:12–64:14, 89:1–90:19; Aguirre Tr. 94:17–20.

[40] Plaintiffs submitted numerous complaint forms submitted by workers.  *See* Ex. 1 to Lloyd Ambinder's Affirmation in Opposition to Defendants Motion for Decertification and Summary Judgment ("Ambinder Aff."), at Dkt. 117–1 (sampling of USI "Phone Problem Call Log" forms, previously submitted by USI employees from various USI locations, spanning 2006 through 2010); *see also* Golub Tr. 70:23–75:2.

[41] *See* Bell Dec., ¶ 21 ("Although my co-workers and I complained about these unlawful deductions, USI did not respond or take action to fix the problem."); *see also* Travis Aff. ¶ 21; Schwarz Aff. ¶ 15; Vargas 2010 Tr. 86:11–87:25.

"Phone Problem Call Log", which many employees did, and Defendants failed to respond to. Defendants' argument that Plaintiffs should have pursued *all* possible avenues for reporting complaints improperly place the burden on the employees to rectify the employers' failure to comply with the law. Further, there is evidence that the supervisors were aware that the MITC System was malfunctioning but made no effort to correct it or assist employees to receive compensation for lost hours. (Leon 2010 Tr. 63:12–64:14; Briceno 2010 Tr. 41:25–43:17.)

Defendants argue that the Court would be forced to engage in dozens of "mini trials" because of the diversity of facts surrounding the Named Plaintiffs' and the opt-in Plaintiffs' individual employment circumstances. Not so. The evidence shows that all USI employees were uniformly subject to a single, centralized telephonic timekeeping system, the MITC System, which according to the employees' testimony, was defective and failed to fully account for employees' hours. Employees were also subject to a primary centralized system for reporting complaints about the MITC system, and there were widespread defects in that system as well, such as complaints going unanswered by management, and problems with the MITC System going uncorrected. As a result, employees' hours were not properly calculated and the correct wages were not paid, including overtime compensation. Accordingly, the factual similarities between and among the Named Plaintiffs and opt-in Plaintiffs weigh in favor of collective adjudication. *See Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 483 (E.D.N.Y. 2001) (the fact that the challenged employment practice was the same for each of the potential class members weighed "very strongly" in favor of a collective action); *Gayle v. Harry's Nurses Registry, Inc.,* No. 07 Civ. 4672, 2012 WL 686860, at *6 (E.D.N.Y. Mar. 2, 2012) *aff'd*, 594 F. App'x 714 (2d Cir. 2014) (that the opt-in Plaintiffs challenged the same employment practice as the named plaintiff weighed in favor of finding the named plaintiff and opt-in plaintiffs similarly situated).

## 2. **Individualized Defenses**

The second relevant factor is the extent to which Defendants will assert individualized defenses. When the employer's defenses are highly individualized as to each Plaintiff, "this factor weighs heavily against proceeding . . . as [a FLSA] collective action." *Zivali*, 784 F. Supp. 2d at 467–68. "In the absence of a company-wide policy or practice, plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work without proper compensation." *Id.* at 468. Here, however, Plaintiffs have shown that Defendants had a company-wide practice requiring employees to clock in and out using the MITC System. In addition, all employees were required to follow a uniform complaint procedure to report problems relating to the MITC System. Thus, Plaintiffs do not have to demonstrate that each manager had knowledge that employees were performing off-the-clock work without being compensated.[42] USI's defenses will not be highly individualized because, here, "the standard of proof and required evidence under FLSA is not an individualized inquiry but one based on policy, practice, and conduct." *Torres v. Gristede's*

---

[42] The failure to pay employees for missed or shortened meal breaks is a form of uncompensated off-the-clock work that, based on the affidavits submitted by Plaintiffs (Vargas Aff. ¶¶ 5, 12; Chica Aff. ¶¶ 5, 16; Orellana Aff. ¶¶ 5, 12–13; Romero Aff. ¶¶ 4, 6, 9; Ulloa Aff. ¶¶ 4–6; Campos Aff. ¶¶ 4, 6; Schwarz Aff. ¶¶ 7, 11, 15; Bell Aff. ¶¶ 6, 9, 12–14), similarly affected employees throughout the FLSA Collective. Accordingly, Plaintiffs' automated meal break deduction claim may be pursued through collective action as part of Plaintiffs' overtime and regular wage claims.

The possibility that Plaintiffs may have to produce individualized proof—and Defendants may therefore have to make individualized challenges—at the damages phase, regarding the amount of unpaid compensation, whether due to the MITC System failing to fully account for an employee's hours or uncompensated missed meal breaks, does not defeat the Named Plaintiffs' and FLSA Collective's similarity at the liability phase. *See Orthocraft, Inc. v. Sprint Spectrum L.P.*, No. 98 Civ. 5007, 2002 WL 31640477, at *2 (E.D.N.Y. Nov. 16, 2002) ("[I]ndividual findings of damages does not defeat class certification.").

*Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *11 (S.D.N.Y. Sept. 29, 2006). Accordingly, this factor weighs in favor of proceeding with this case as a collective action.

### 3. <u>Fairness and Procedural Considerations</u>

Finally, the Court turns to whether fairness and procedural considerations counsel for or against decertification. Certification is favored where a collective action would lower costs to the Plaintiffs by pooling resources, efficiently resolving common issues of law and fact, and coherently managing the class in a manner that will not prejudice any party. *Ayers*, 2007 WL 646326, at *6; *see Jason v. Falcon Data Com, Inc.*, No. 09 Civ. 03990, 2011 WL 2837488 (E.D.N.Y. July 18, 2011) ("[C]ourts consider whether a collective action would lower costs to the plaintiffs through the pooling of resources, efficiently resolve common issues of law and fact, and coherently manage the class in a manner that will not prejudice any party") (quoting *Ayers*, 2007 WL 646326, at *6). This factor weighs heavily in favor of collective action. Plaintiffs are unsophisticated, minimum-wage-workers, many of whom are not familiar with the American legal system. It is unlikely that these individuals would be able to successfully bring claims on their own. Allowing Plaintiffs to proceed collectively would be a more effective use of this Court's and the parties' resources.

Because all three factors weigh in favor of a FLSA collective action, Defendants' motion to decertify the FLSA Collective is denied.

### III. <u>Defendants' Summary Judgment Motion</u>

The Court denies Defendants' motion for summary judgment for substantially the same reasons it denies decertification of the FLSA Collective. Given that Plaintiffs have demonstrated that the Named Plaintiffs and opt-in Plaintiffs were all subject to an allegedly defective timekeeping system and related procedures that resulted in Plaintiffs being underpaid, they have

established the existence of material facts relating to their overtime and regular wage claims under the FLSA and NYLL.[43]

## IV.    **Supplemental Jurisdiction**

Plaintiffs argue that supplemental jurisdiction should be exercised over the NYLL claims. The Second Circuit has routinely exercised supplemental jurisdiction over state law wage and hour claims that are supplemental to a FLSA collective action. *See e.g., Duchene v. Michael L. Cetta, Inc.*, 244 F.R.D. 202, 204 (S.D.N.Y. 2007) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together."); *Guzman v. VLM, Inc.*, No. 07 Civ. 1126, 2008 WL 597186, at *10 (E.D.N.Y. Mar. 2, 2008) ("[I]t is routine for courts in the Second Circuit to certify state labor law classes in FLSA actions."). Additionally, Plaintiffs' claims under the NYLL relate to the same factual allegations underlying the FLSA claims. Because judicial economy and convenience weigh in favor of exercising the Court's supplemental jurisdiction to over Plaintiffs' NYLL claim, Plaintiffs' motion is granted.

---

[43] To the extent that Defendants argue that the Named Plaintiffs, who worked at the Massapequa J.C. Penney store, were involved in a fraudulent payroll scheme, rendering them ineligible to collect their alleged withheld wages, the Court disagrees. The evidence clearly indicates that this scheme was perpetrated at the behest of USI's own management, not the named Defendants. Although the Named Plaintiffs physically entered hours under erroneous PINs, the Plaintiffs' testimony, which must be credited at this stage, indicate that they did so because they were instructed by their USI managers to do so, and that as a result of this scheme, they (Plaintiffs) were underpaid by the potentially thieving managers. Accordingly, the Court rejects Defendants' argument that the FLSA Collective should be decertified on this basis. *Accord Kuebel*, 643 F.3d at 363–64 ("A contrary conclusion would undermine the remedial goals of the FLSA, as it would permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime.").

V.	**Plaintiffs' Motion For Leave to Amend the Complaint**

Plaintiffs move to amend the complaint to (1) clarify their meal break claims; and (2) add the individual opt-in Plaintiffs as Named Plaintiffs to the complaint. (Pl. Mem. at 12.) Rule 15(a) of the Federal Rules of Civil Procedure generally governs the amendment of complaints and instructs courts that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendments are favored as they tend "to facilitate a proper decision on the merits." *Amaya v. Garden City Irrigation, Inc.*, No. 03 Civ. 2814, 2008 WL 2940529, at *1 (E.D.N.Y. July 28, 2008) (internal quotations and citation omitted). "The district court has discretion whether or not to grant leave to amend, and its discretion is not subject to review on appeal except for abuse of discretion." *Shomo v. State of New York*, 374 F. App'x 180, 182 (2d Cir. 2010) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)).

A.	**Amending the Complaint to Clarify Meal Break Claims**

Here, Plaintiffs' proposed amendment to clarify its meal break claim is unnecessary given the clarification of this claim through the summary judgment briefing process. Accordingly, Plaintiffs' motion to amend the complaint to clarify their meal break claim is denied.

B.	**Amending Complaint to Add Individual Opt-In Plaintiffs as Named Plaintiffs**

Plaintiffs seek to amend the pleadings to add each of the opt-in Plaintiffs to the caption as a Named Plaintiff. (Pl. Mem. at 15.) This amendment, Plaintiffs contend, would permit the opt-in Plaintiffs to pursue the state law claims in the complaint, specifically the claims under the NYLL. Plaintiffs argue that if these opt-in Plaintiffs are not permitted to pursue their claims in this action, they will file individual actions, which would lead to a multiplicity of suits and a waste of judicial resources. (*Id.* at 16.)

Because the opt-ins might otherwise be unable to pursue the state law claims in this case, the Court finds that the proposed amendment is appropriate. *See Saleem v. Corporate Transp. Grp., Ltd.*, No. 12 Civ. 8450, 2014 WL 7106442, at *1 (S.D.N.Y. Dec. 9, 2014) (finding that where the collective action opt-in notice identified only the FLSA, and not the NYLL, claim, "there [was] no basis to conclude that the Opt-In Plaintiffs joined the Named Plaintiffs in bringing claims under the NYLL").[44] Once added as Named Plaintiffs, the opt-in Plaintiffs will have standing to pursue the state law claims in this action.[45] For case management purposes, this action will be captioned, "In re: USI Wage & Hour Litigation".

## VI.    Plaintiffs' Rule 23 Motion

Plaintiffs have not renewed their motion to certify a class under Rule 23, which was denied by Judge Seybert on September 28, 2012. Accordingly, the Court sets the following deadline for Plaintiff to do so, if it so desires: Plaintiffs shall serve their moving brief upon Defendants on or before November 30, 2015; Defendants' opposition to be served on or before January 8, 2016; Plaintiffs reply, along with the full briefing motion, shall be submitted to the Court on or before February 12, 2016.

---

[44] In this case, the consent-to-join forms sent to the opt-in Plaintiffs did not reference the complaint's state law claims: "By signing below I [] wish to participate in this lawsuit to recover any unpaid wages that may be owed to me under the Federal Fair labor Standards Act". (Dkt. 45.)

[45] The Court reiterates that the 19 opt-in Plaintiffs who filed their consent forms after the deadline are dismissed from the FLSA Collective. This includes the following individuals: Thomas Winslow, Maria Vega, Brian McMahon, Cathy Gill, Edgard Centeno, Encamancion Garcia, Eric Merrill, Stephanie Narvaez, Donna LeGree, Luis Herrera, Howard Sterling, Eulogia Nuesi, Jose Alvarez, Paul M. Trapp, Vera L. Dean, Eddie Scott, Veronica Bussey, Mavel Mercedes, Venessa K. Parker. (Baranker Aff. (1) ¶ 57.)

*CONCLUSION*

For the foregoing reasons, Defendants' motions for summary judgment and decertification of the FLSA Collective are denied. Plaintiffs' motion for partial summary judgment is denied, and its motion to amend the complaint is granted in part, and denied in part. In addition, because his employment at USI pre-dates the FLSA Collective action date, Named Plaintiff Francisco Vargas Aguirre is dismissed from this case. Finally, because USI employees who only worked at Food Circus, Hard Rock Café, Fooderama, and Boardwalk Hall may not have used or been subject to the telephone or automated timekeeping systems at issue in this case, Defendants shall file, by October 30, 2015, a list of all opt-in Plaintiffs who worked only at one or more of these locations. Plaintiffs shall file a response, by December 18, 2015, including any relevant evidence, explaining why the employees on Defendants' list should not be dismissed from this case.

SO ORDERED:


 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge


Dated: September 29, 2015
      Brooklyn, New York