UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
INES BRICENO[1] and ESMERALDA LEON
Individually, and on behalf of all other persons
similarly situated who were employed by USI
SERVICES GROUP, INC., ULTIMATE
SERVICES INC., and FRED GOLDRING
and/or any other entities affiliated with or
controlled by USI SERVICES GROUP, INC.,
ULTIMATE SERVICES INC., AND FRED
GOLDRING,

                              Plaintiffs,

                  -against-                      **MEMORANDUM & ORDER**
                                                                     09–CV–4252(PKC)

USI SERVICES GROUP, INC., ULTIMATE
SERVICES INC., and FRED GOLDRING
and/or any other entities affiliated with or
controlled by USI SERVICES GROUP,
INC., ULTIMATE SERVICES INC., and
FRED GOLDRING,

                              Defendants.
-----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

       Defendants USI Services Group, Inc., Ultimate Services Inc., and Fred Goldring (collectively, "Defendants" or "USI") bring the instant motion seeking to have the Court reconsider aspects of its September 29, 2015 Memorandum & Order ("M&O"), in which the Court (1) denied the Named Plaintiffs' ("Named Plaintiffs" or "Plaintiffs") motion for partial summary judgment; (2) denied in part and granted in part Plaintiffs' motion to amend the Complaint; and (3) denied Defendants' motions for summary judgment and to decertify the collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA collective"). (*See* Dkt. 121

---

[1] Plaintiffs' counsel has misspelled the names of Ines Briceno and Esmeralda Leon in the caption and intermittently throughout the course of this litigation. The Court has corrected the caption above to reflect the correct spellings.

1

(M&O).) Specifically, Defendants request reconsideration of the following three aspects of the M&O: (1) the denial of Defendants' motion to decertify the FLSA collective; (2) the grant of Plaintiffs' motion to amend their Complaint to add the opt-in plaintiffs from the FLSA collective as Named Plaintiffs, so that they may pursue the New York Labor Law ("NYLL") claims at issue in Plaintiffs' putative class action; and (3) the Court's alleged "invitation to Plaintiffs" to renew their class certification motion under Rule 23 of the Federal Rules of Civil Procedure. (*See* Dkt. 122-1 at 1–2.) The Court assumes the parties' familiarity with the facts and procedural history of this case. For the reasons set forth below, Defendants' motion for reconsideration is DENIED IN PART and GRANTED IN PART.

*DISCUSSION*

I. <u>Standard of Review for Motions for Reconsideration</u>

Local Civil Rule 6.3, under which Defendants have moved for reconsideration (*see* Dkt. 122 at 2), must be "strictly construed" so as to avoid "unnecessary relitigation," and may not be used as a substitute for appealing a final judgment. *Pena-Rosario v. Reno*, No. 99-CV-4652, 2000 U.S. Dist. LEXIS 6333, at *2–4 (E.D.N.Y. May 11, 2000). The grounds for reconsideration are therefore limited to "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust* (*Kolel*), 729 F.3d 99, 104 (2d Cir. 2013) (quotation marks and citation omitted), and such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "[A] motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided," *id.*, because motions for

reconsideration are not "vehicle[s] for . . . taking a second bite at the apple," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.), *as amended* (2d Cir. 2012) (internal quotation marks omitted).

## II. Denial of Defendants' Motion to Decertify the FLSA Collective

The Court declines to reconsider its denial of Defendants' motion to decertify the FLSA collective. Defendants identify no evidence or law that the Court overlooked or failed to consider, such that the Court, in its discretion, should reconsider that aspect of its M&O. *See Lennon v. Suffolk Transp. Serv., Inc.*, No. 14-CV-4999, 2015 U.S. Dist. LEXIS 152230, at *2 (E.D.N.Y. Nov. 6, 2015) ("Motions for reconsideration . . . are committed to the sound discretion of the district court.").

Virtually all of the arguments in Defendants' motion—*i.e.*, that the facts of this case are identical to those before the Court in *DeSilva v. North Shore-Long Island Jewish Health System, Inc.*, 27 F. Supp. 3d 313 (E.D.N.Y. 2014), in which the Court decertified the FLSA collective; that Defendants' business records demonstrate that Plaintiffs were not subject to a uniform illegal compensation policy; that there was an effective complaint mechanism in place should Defendants' timekeeping system fail to properly record time; that Plaintiffs' affirmations, upon which this Court relied, are not credible and demonstrate that Plaintiffs are not similarly situated;[2] that Named Plaintiffs and the opt-in plaintiffs are not similarly situated in light of differences in

---

[2] Defendants are correct that because Mr. Aguirre "last worked for USI in 2003, three years before [the telephonic system] was first implemented" (Dkt. 122-1 at 5; *compare* M&O at 5–6 n.9 *with* Dkt. 122-1 at 5–6), the Court erred in citing to the Affirmation of Francisco Vargas Aguirre as evidence of "routinely encountered problems attempting to record time" on Defendants' telephonic system. (M&O at 20 n.37.) However, that error is not a sufficient basis for the Court to reconsider its decision. The exclusion of Mr. Aguirre's affirmation from consideration does not "alter" the Court's conclusion that decertification of the FLSA collective should be denied. *Shrader*, 70 F.3d at 257.

3

employment circumstances and the discretion afforded to supervisors at each individual location regarding overtime work and meal periods; that Defendants have individualized defenses as to various plaintiffs, including the Named Plaintiffs, because they engaged in fraudulent conduct unique to their location; and that, in light of the foregoing, fairness and procedural considerations counsel against collective treatment (Dkt. 122-1 at 3–15; Dkt. 127 at 4–18[3])—are merely "reiterate[d] or repackage[d]" from Defendants' underlying briefing. In other words, Defendants are seeking to have the Court reconsider "argument[s] previously rejected."[4] *Pena-Rosario*, 2000 U.S. Dist. LEXIS 6333, at *3. This is not a proper basis for reconsideration.

At most, Defendants suggest that the Court failed to consider a prior finding by the Honorable Joanna Seybert in this matter—*i.e.*, that "there was not a single, uniform policy for correcting time-keeping errors (due to both automatic deductions for meal breaks that were never taken and issues with the MITC software)" (Dkt. 127 at 6 (citing Dkt. 73 at 19))—which Defendants argue supports their claim that Defendants did not employ a single illegal compensation policy, and thus defeats certification of Plaintiffs' FLSA collective action. This is incorrect for several reasons.

---

[3] While the Court has considered the entirety of Defendants' 25-page reply memorandum in support of their motion for reconsideration, the Court notes that Defendants flagrantly violated the Court's Individual Practices and Rules, which limit reply submissions to ten pages. (*See* Judge Pamela K. Chen, Individual Practices and Rules, rule 3.B.)

[4] For example, Defendants' reconsideration papers are rife with statements such as "the Court did not take into account the business records that Jay Baranker authenticated that establish that the affiants who claimed that they were deprived of compensation due to an illegal uniform compensation system were wrong in that contention." (Dkt. 127 at 12 n.16.) That the Court referenced Mr. Baranker's affirmations and attached exhibits more than ten times in its M&O is an indication that those materials were, in fact, considered and were *not* overlooked. Defendants' argument is a paradigmatic example of a party "reargu[ing] those issues already considered when [it] does not like the way the original motion was resolved." *See ReSource N.E. of Long Island, Inc. v. Town of Babylon*, 80 F. Supp. 2d 52, 64 (E.D.N.Y. 2000).

First, the Court clearly considered Judge Seybert's prior decision relating to Rule 23 class certification and other issues. Indeed, the Court's M&O specifically notes and reiterates Judge Seybert's invitation from her prior decision for Plaintiffs to renew and supplement their Rule 23 certification request. (M&O at 3–4 & n.6.)

Second, Defendants failed to raise this argument about Judge Seybert's prior finding in their decertification motion. Because Judge Seybert's decision clearly existed at the time Defendants filed their motion, it is not newly discovered evidence and cannot be raised now. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir. 1997) ("The district court properly declined to consider [the newly asserted evidence], as it had been in [the party's] possession for two years before the court's order and therefore was not 'newly discovered evidence' that might have justified reconsideration of the court's decision."); *Naiman v. N.Y. Univ. Hosps. Ctr.*, No. 95 Civ. 6469, 2005 U.S. Dist. LEXIS 6817, at *3 (S.D.N.Y. Apr. 20, 2005) ("[T]he purpose of Local Rule 6.3 is to ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.") (quotation marks omitted).

Third, Defendants' characterization of Judge Seybert's finding simply restates the same arguments Defendants made in their motion to decertify the FLSA collective, which the Court has considered and rejected.

Lastly, to the extent Defendants are suggesting that Judge Seybert's prior finding constitutes law of the case regarding the issue of whether Defendants maintained a uniform time-keeping and compensation policy, Defendants misinterpret Judge Seybert's statement. Judge Seybert did not conclude that Defendants did not have *any* uniform policy, but rather implied that there may have been *multiple* uniform policies (rather than one "single, uniform policy") for

5

correcting time-keeping errors that might be applicable to different subclasses, namely both a "paper time-keeping system" in place "[f]rom 2003 through 2006" and "the MITC telephonic system" implemented "[i]n 2006." (Dkt. 73 at 19.) Indeed, Judge Seybert's reasoning led her to conclude that "there are two separate policies at issue affecting two distinct groups of class members," and consequently to grant Plaintiffs an "opportunity to clarify their class definition in a subsequent motion," including as to potential subclasses for "pre-2006" and "post-2006." (Dkt. 73 at 19–20 & n.7.)

Because Defendants have pointed to no evidence or law that the Court overlooked or that would alter the Court's denial of Defendants' motion to decertify the FLSA collective, Defendants' motion for reconsideration of that aspect of the Court's M&O is denied.

## III. Grant of Plaintiffs' Motion for Leave to Amend the Complaint to Add Individual Opt-In Plaintiffs as Named Plaintiffs

However, the Court grants Defendants' motion for reconsideration of the Court's order permitting Plaintiffs to amend the Complaint to add the opt-in plaintiffs from the FLSA collective as Named Plaintiffs, though not for the reasons proffered by Defendants.[5] Rather, the Court reconsiders its order "to correct a clear error or prevent manifest injustice," *Kolel*, 729 F.3d at 104 (quotation marks and citation omitted), in that the Court did not weigh the liberality with which leave to amend is granted under Rule 15 of the Federal Rules of Civil Procedure against the "good cause" showing required by Rule 16 of the Federal Rules of Civil Procedure where leave to amend is sought after a pretrial scheduling order has issued. The Court overlooked the insufficiency of

---

[5] Defendants' arguments on this issue consist of evidence or law already considered, or evidence or law newly presented by, but available to, Defendants at the time of the underlying briefing, none of which is a proper basis for reconsideration. *See Lightfoot*, 110 F.3d at 909; *Naiman*, 2005 U.S. Dist. LEXIS 6817, at *3.

Plaintiffs' good cause showing, which should have been weighed against the prejudice resulting to Defendants from the potential addition of 169 individual NYLL claims, as to which no discovery has been conducted.[6] Applying the proper standard and balancing test, the Court should have denied Plaintiffs' motion to amend the Complaint to convert the opt-in plaintiffs to Named Plaintiffs, and does so now.

In their underlying motion to amend the Complaint, Plaintiffs argued that "leave to amend a Complaint shall be freely given," citing Federal Rule of Civil Procedure rule 15. (Dkt. 110 at 12–13.)[7] But in this Circuit, "[w]here a scheduling order has been entered, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause,'" which "depends on the diligence of the moving party." *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). Diligence "is not, however, the only consideration"; rather, district courts "may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

Magistrate Judge Tomlinson issued a scheduling order in this case on January 6, 2010, setting April 12, 2010 as the deadline to amend the pleadings. (Dkt. 14.) Neither in their

---

[6] Both parties' papers refer repeatedly to 188 opt-in plaintiffs, but as the Court held in its M&O, only 169 opt-in plaintiffs are part of the FLSA collective. (M&O at 3 & n.5.)

[7] The cases cited by Plaintiffs for this proposition discuss motions to amend solely in the context of Rule 15. *See Foman v. Davis*, 371 U.S. 178, 179 (1962) (considering proposed amendment prior to issuance of scheduling order, at motion to dismiss phase); *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234–35 (2d Cir. 1995); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *Reiter's Beer Distribs., Inc. v. Christian Schmidt Brewing Co.*, 657 F. Supp. 136, 141 (E.D.N.Y. 1987).

underlying motion papers, nor in their opposition to Defendants' motion for reconsideration, have Plaintiffs attempted to establish *any* cause for their delay in moving to amend their Complaint to convert the 169 opt-in FLSA collective plaintiffs to Named Plaintiffs in this action, let alone the requisite "good cause" and "diligence" required by Rule 16.[8]

Instead, Plaintiffs argued, both in the underlying briefing and in opposition to Defendants' motion for reconsideration, that the NYLL claims of the opt-in plaintiffs had been tolled during the pendency of this action and that, should the opt-in plaintiffs not be "allowed to pursue any claims they may possess under state law," "they will be compelled to file individual actions, which would only lead to multiplicity of suits, repetitive discovery and a waste of precious judicial resources." (Dkt. 110 at 15–16. *See also* Dkt. 118 at 9–10; Dkt. 125 at 14–15.) Even assuming the NYLL claims of the opt-in plaintiffs were tolled for some period after the filing of this action on October 2, 2009,[9] Plaintiffs fail to demonstrate how that tolling justifies the lengthy delay in

---

[8] It should be noted that although Defendants failed to raise the Rule 16 "good cause" standard *both* in their original and reconsideration briefing, the Court nonetheless is compelled to raise it *sua sponte* in order "to correct a clear error [and] prevent manifest injustice." *Kolel*, 729 F.3d at 104 (quotation marks and citation omitted).

[9] While both parties have focused almost exclusively on the tolling issue in their briefing, neither party has addressed the actual time at issue. Even if Defendants were correct that "the statute of limitations was no longer tolled" once Judge Seybert denied Plaintiffs' Rule 23 class certification motion in her September 28, 2012 order (Dkt. 127 at 19)—which is far from clear, given that Judge Seybert granted Plaintiffs leave to renew their class certification motion—it is still unlikely that the NYLL claims of the opt-in plaintiffs would be time-barred, particularly those based on the post-2006 timekeeping and meal break policies and practices.

The filing of the class action Complaint on October 2, 2009 tolled the statute of limitations for the class claims, including the NYLL claims, for all putative members of the asserted class. *See Crown, Cork & Seal Co., Inc. v. Parker* (*Crown*), 462 U.S. 345, 350 (1983) ("The filing of a class action tolls the statute of limitations as to all asserted members of the class . . . .") (quotation marks and citation omitted); *Am. Pipe & Constr. Co. v. Utah* (*Am. Pipe*), 414 U.S. 538, 553 (1974) ("[T]he commencement of the original class suit tolls the running of the statute [of limitations] for all purported members of the class . . . ."). NYLL claims are subject to a six-year limitations period. (NYLL §§ 198, 663.) The telephonic time-keeping system at issue here, as well as the automatic meal break deduction policy, were implemented in 2006. (M&O at 6–8 & n.14.) If

8

seeking to convert all 169 opt-in plaintiffs to Named Plaintiffs—raised for the first time in Plaintiffs' November 2014 motion to the amend the complaint—given that the existence of these opt-in plaintiffs has been known since the conclusion of the opt-in period on December 31, 2010 (Dkt. 55; M&O at 2–3) and discovery has been closed since January 2014, except for a limited reopening in April 2014 to conduct discovery as to the three Named Plaintiffs and two opt-in plaintiffs, unrelated (or at best, minimally related) to Plaintiffs' NYLL claims.[10] (Dkt. 91.) Plaintiffs have provided no explanation for this delay, no showing of diligence on their part, and certainly no explanation sufficient to meet the good cause standard set forth by Rule 16.

---

those policies were implemented on January 1, 2006, and if all of the opt-in plaintiffs suffered violations giving rise to their NYLL claims on that very day, then at most three years, nine months, and one day of the limitations period had run when the Complaint was filed on October 2, 2009, or alternatively, members of the putative class still had, at minimum, two years, two months, and 30 days from September 28, 2012 (the day when Defendants allege the statute of limitations began to run again) in which to file claims under the NYLL for the post-2006 policies and practices. Plaintiffs' filing, on November 14, 2014, of their motion to amend the Complaint to convert the opt-in plaintiffs to Named Plaintiffs to assert their NYLL claims fell within the time remaining in the limitations period, thereby likely rendering those State law claims timely. *See Am. Pipe*, 414 U.S. at 561 (where class action "was filed with 11 days yet to run in the [limitations] period as tolled," and therefore intervenors "had 11 days after the entry of the order denying them participation in the suit as class members in which to move for permission to intervene," the Supreme Court deemed motions timely since filed "only eight days after" the order denying class certification).

[10] Plaintiffs argue that this discovery permitted "Defendants [to] explore the New York Labor Law meal break allegations." (Dkt. 125 at 16.) However, it appears that the post-January 2014 discovery was limited to, and specifically targeted at, Plaintiffs' *FLSA* meal break allegations, given that the discovery was conducted in contemplation of Plaintiffs' motion for partial summary judgment for liability on that claim. (Dkt. 86 at 2–3 (seeking pre-motion conference in contemplation of a forthcoming motion for "summary judgment as to liability in an action under the FLSA" as to "whether or not Defendants' practice of automatically deducting time from workers' salaries . . . resulted in unlawful wage violations").) Even insofar as Defendants were able to engage in limited discovery with respect to the NYLL meal break allegations of these five individuals, there is no indication that Defendants were on notice that they should engage in more fulsome discovery of the panoply of State law claims alleged, either as to these two opt-in plaintiffs or as to each of the other 169 opt-in plaintiffs.

While the absence of any good cause showing would be enough, in and of itself, to warrant denial of Plaintiffs' motion to amend, the Court also weighs the significant prejudice to Defendants, who are now faced with the prospect of having to potentially litigate 169 additional individual NYLL claims, about which they have taken no discovery. "A proposed amendment that would cause the parties to expend significant additional resources to conduct discovery . . . is prejudicial." *Moore v. Publicis Groupe SA & MSL Grp.*, 11 Civ. 1279, 2013 U.S. Dist. LEXIS 120024, at *21 (S.D.N.Y. Aug. 23, 2013) (quotation marks omitted).[11] Moreover, courts are "more likely to find an amendment prejudicial if discovery has closed." *Scott v. Chipotle Mex. Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014). Here, discovery had been closed for approximately six months when Plaintiffs served Defendants with the motion to add the opt-in plaintiffs as Named Plaintiffs. (*See* Dkt. 101 (August 7, 2014 letter indicating service of Plaintiffs' motion on Defendants on July 31, 2014).) Moreover, almost a year prior to serving their motion, at an August 2013 status conference, Plaintiffs represented to the Court and Defendants that they (Plaintiffs) were abandoning Rule 23 class certification as to their NYLL claims. In light of that representation and the absence of any indication prior to the service of their motion that Plaintiffs intended to amend their complaint to convert the opt-in plaintiffs to Named Plaintiffs,[12] Defendants were not

---

[11] Indeed, in the case upon which Plaintiffs rely, *Sapon v. Cherry Hill Market Corp.*, No. 10-CV-5616, 2014 U.S. Dist. LEXIS 136193 (E.D.N.Y. Sept. 25, 2014) (*see* Dkt. 118 at 9–10; Dkt. 125 at 14–15), Plaintiffs initiated the conversion of opt-in FLSA plaintiffs to named plaintiffs one month after the denial of class certification, and did so with respect to only *four* opt-in plaintiffs. *Sapon* at *1–3.

[12] Plaintiffs appear to have referred only to their motion for summary judgment in discussions with Magistrate Judge Tomlinson (Dkt. 82), and similarly indicated their intent to move only for summary judgment in their request for a pre-motion conference before this Court (Dkt. 86). Even in submitting a proposed briefing schedule for the underlying motions at issue here, Plaintiffs described their motion as one "for partial summary judgment," with no mention of seeking to amend the Complaint to convert the opt-in plaintiffs to Named Plaintiffs. (*See* Dkt. 93.) The Court can glean no indication from the record that Plaintiffs provided notice of their intent to

on notice, and had no reason to believe, that they needed to engage in discovery of the NYLL claims beyond the Named Plaintiffs. *See infra*, Section IV. This is particularly true in light of the consents signed by the opt-in plaintiffs, which, as Defendants point out, were limited to the FLSA action and did not contemplate the assertion of any additional claims. (*See* Dkt. 44 (Notice of Pendency of Lawsuit stipulating that "[t]his Notice relates only to the Fair Labor Standards Act claims," and advising recipients that "[i]n the future, [they] may be advised in a separate notice of any additional rights that [they] may have to recover under New York law . . . ."); Dkts. 45–52, 54 (Consents to Join Collective Action for Unpaid Wages, each opt-in plaintiff stipulating that they "wish to participate in this lawsuit to recover any unpaid wages that may be owed to [them] under the Federal Fair Labor Standards Act").) *Cf. Hicks v. T.L. Cannon Corp.*, 35 F. Supp. 3d 329, 336–39 (W.D.N.Y. 2014) (holding, on consideration of both Rule 23 class certification and summary judgment motions, that "FLSA opt-in plaintiffs may join state law claims" where FLSA consent forms stated that opt-in plaintiffs "preserve[d] and pursue[d] any claim[s] that [they] may have to the greatest extent possible" and consented to being party plaintiffs "in any lawsuit and/or lawsuits that plaintiffs' attorneys" might bring "on behalf of [themselves] and other employees alleged to be similarly situated"). Because Defendants were not on notice that they should engage in discovery on the NYLL claims of the opt-in plaintiffs—who, prior to Plaintiffs' motion to amend, had only opted into the lawsuit with respect to their FLSA claims—and do not appear to have engaged in such discovery, Defendants would likely need to reopen discovery as to the individual claims of all 169 of the opt-in plaintiffs to be able to mount an adequate defense.[13]

---

seek this amendment until service of the motion itself. (*See* Dkt. 101 (describing motion as one for "Partial Summary Judgment and [a] Request to Amend the Complaint").)

[13] Plaintiffs' arguments regarding alleged inefficiencies in judicial resources should the opt-in plaintiffs not be converted to Named Plaintiffs rings hollow in light of Plaintiffs' marked delay in filing the motion to amend. Having waited until after the close of discovery to, in effect,

11

In light of these considerations, particularly Plaintiffs' failure to demonstrate "good cause" for the delay, or diligence in filing the motion to amend the Complaint, coupled with the considerable prejudice to Defendants, the Court grants Defendants' motion for reconsideration of this aspect of the Court's M&O, and now denies Plaintiffs' motion to amend the Complaint to add the opt-in plaintiffs as Named Plaintiffs. *See Portelos v. City of New York*, No. 12-CV-3141, 2015 U.S. Dist. LEXIS 123261, at *5–9 (E.D.N.Y. Sept. 15, 2015) (denying motion to amend complaint filed after issuance of scheduling orders because plaintiff failed to demonstrate good cause, "discovery was finally coming to an end," and to "allow plaintiff to amend . . . the Amended Complaint, after years of litigation, would be substantially prejudicial to defendants").

## IV.   "Invitation" to Plaintiffs to Renew Motion for Class Certification

For substantially the same reasons, the Court grants Defendants' motion for reconsideration of its "invitation" to Plaintiffs to renew their Rule 23 class certification motion. As previously stated, Plaintiffs represented to the Court and Defendants in an August 15, 2013 status conference that they were abandoning their pursuit of Rule 23 certification for the NYLL claims. (*See* 8/15/13 Transcript of Record at 3:21–4:5 ("THE COURT: Okay. So I'm getting the sense that at this point, you may be abandoning entirely the options of certifying the larger class?

---

add 169 individual NYLL claims, as to which it appears no discovery has occurred, it seems inevitable that discovery would have to be re-opened for this purpose. Thus, Plaintiffs' claim that the consolidation of the 169 opt-in plaintiffs' NYLL claims will save judicial resources and promote judicial efficiency is illusory at best. Moreover, that there may be a multitude of individual actions litigating the NYLL claims, rather than centralized adjudication of those claims in this Court, is a result identical to that which follows a *denial* of Rule 23 class certification. *See Crown*, 462 U.S. at 354 (where Rule 23 class certification is denied, plaintiffs can either "choose to file their own suits or to intervene as plaintiffs in the pending action"). Just as in the case of a denial of Rule 23 class certification, where class-wide adjudication is found to be inappropriate, so too here, where the Court finds inappropriate Plaintiffs' unjustifiably late request to add 169 individual NYLL claims, the opt-in plaintiffs have the option of pursuing their NYLL claims by filing individual actions or moving to intervene in this action, subject, of course, to the rules and procedures governing those courses of action.

MS. LEEDS [Plaintiffs' counsel]: That's correct, Your Honor, for various reasons . . . . So instead of dealing with a class of a couple thousand, 180 is much more manageable.").) It is presumably for this reason that Defendants argue that they "had no need to undertake, and did not undertake, class-wide discovery,"[14] and as a result, they will suffer "extreme prejudice" as a result of the renewal of the Rule 23 class certification motion. (Dkt. 122-1 at 20.)[15]

Plaintiffs argue that "[t]he parties engaged in thorough discovery pertaining to the entire class" and that "Defendants always had the opportunity to depose any opt-in plaintiffs they sought discovery from, but chose not to exercise that right." (Dkt. 125 at 16.) But this misstates the history of this case and improperly conflates the claims certified in the FLSA collective with the State law claims that were the subject of the Rule 23 class certification motion. Following Judge Seybert's September 28, 2012 order denying Rule 23 class certification, but granting Plaintiffs leave to renew that motion, the parties initially filed a briefing schedule for the renewed motion that provided "sufficient time for the parties to continue to thoroughly explore the possibility of settlement." (Dkt. 74.) The parties subsequently filed numerous joint requests to extend Plaintiffs' time to file the renewed motion, ultimately requesting that "the deadline to submit [Plaintiffs'] renewed motion for class certification be temporarily stayed until after [a status] conference" that

---

[14] While Defendants failed to raise Plaintiffs' abandonment of their Rule 23 class certification in either their underlying opposition to Plaintiff's motion to amend the Complaint or in their motion for reconsideration briefing, Defendants *did* raise it in their motion to decertify the FLSA collective. (Dkt. 114-1 at 4–5.)

[15] Defendants argue further that, to the extent they engaged in class-wide discovery, "the class claim only was for overtime under the FLSA and discovery was limited to that one claim." (Dkt. 127 at 23–24.) This appears to overstate matters, as Defendants were permitted to reopen discovery for the purpose of investigating meal break claims, which sound under both FLSA and the NYLL. *See supra* n.10. However, Defendants are correct that they were not on notice that they might need to litigate the myriad individual NYLL claims of each of these specific 169 individual opt-in plaintiffs. (*See* Dkt. 127 at 24.)

13

Plaintiffs requested before this Court. (*See* Dkts. 75–77.) That status conference was the one held on August 15, 2013, during which Plaintiffs represented that they were abandoning their Rule 23 class certification motion on the NYLL claims. The parties then requested that the Court refer the matter to the assigned Magistrate Judge for a settlement conference. (Dkts. 79–81.) Settlement efforts ultimately failed on November 5, 2013, at which point Plaintiffs indicated that they would move for summary judgment, and Defendants expressed their intention to move for decertification of the FLSA collective. Discovery was held open until January 15, 2014. (Dkt. 82.)

Defendants' failure to engage in class-wide discovery, or discovery as to the NYLL claims of each of the FLSA opt-in plaintiffs, at that point was likely and justifiably motivated, at least in part, by Plaintiffs' representation that they would not be seeking Rule 23 class certification.[16] That "Defendants always had the opportunity to depose any opt-in plaintiffs they sought discovery from" (Dkt. 125 at 16) does not obviate the fact that Defendants had no notice, or reason to believe, they *needed* to conduct discovery as to *these particular individuals* to mount an adequate defense to their individual NYLL claims, or that they needed to engage in class-wide discovery as to those claims. Efforts to engage in such discovery, given Plaintiffs' express abandonment of their Rule 23 class claims, would have been a waste of the parties' resources. In light of this history, the corresponding prejudice to Defendants of permitting Plaintiffs to pursue a class certification motion they abandoned prior to the close of discovery, and the Court's reconsideration of its

---

[16] It appears that Plaintiffs' motion to convert the opt-in plaintiffs to Named Plaintiffs may have been filed in express contemplation of substituting for, or acting as a *de facto,* Rule 23 class certification. (*See, e.g.,* Dkt. 110 at 16 (arguing opt-in plaintiffs should be converted to Named Plaintiffs to avoid the filing of individual actions, as "[t]his is 'precisely the multiplicity of activity which *Rule 23* was designed to avoid'") (citation omitted) (italics in original)); Dkt. 118 at 9–10 (same); Dkt. 125 at 15 (same).)

14

conversion of the opt-in plaintiffs to Named Plaintiffs, the Court reconsiders its grant to Plaintiffs of leave to renew their class certification motion. That door is shut, by Plaintiffs' own hand.

## *CONCLUSION*

For the foregoing reasons, Defendants' motion for reconsideration is denied in part and granted in part. The Court denies the reconsideration motion as to the Court's denial of decertification of the FLSA collective, but grants the reconsideration motion as to the Court's grant of Plaintiffs' motion to amend the Complaint to add the opt-in FLSA collective plaintiffs as Named Plaintiffs and as to its leave to Plaintiffs to renew their Rule 23 class certification motion. The parties shall proceed to trial on the claims certified in the FLSA collective and the State law claims of the Named Plaintiffs.

SO ORDERED:


 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: January 26, 2016
      Brooklyn, New York

15